UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ANTONIO BLAND,

                        Petitioner,

        -against-

UNITED STATES OF AMERICA,

                      Respondent.
-----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

10-CV-3249 (ERK) (JMA)

A P P E A R A N C E S:

GEORGIA J. HINDE
Law Office of Georgia J. Hinde
1133 Broadway, Suite 304
New York, NY 10010
       *Attorney for Petitioner*

LORETTA E. LYNCH
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201
       *By Andrew E. Goldsmith, Nathan Reilly, David Bitkower*
       *Assistant United States Attorneys*

**AZRACK, United States Magistrate Judge:**

      Petitioner Antonio Bland, Sr. ("petitioner") is a prisoner in federal custody currently serving a sentence imposed by the Honorable Judge Edward R. Korman. He has filed a petition under 28 U.S.C. § 2255 seeking relief from his federal sentence. Pro Se 2255 Pet., ECF No. 1. Petitioner alleges that: (1) his plea of guilty must be vacated because he received ineffective assistance of counsel from the retained attorney who represented him in the initial proceedings; and (2) his sentence must be vacated and he must be resentenced because he was improperly sentenced under the Armed Career Criminal Act ("ACCA") due to the ineffective assistance of

the appointed attorney who represented him at sentencing. Mot. for Relief; Mem. in Supp. of Pet. ("Pet.'s Mem."), ECF No. 18.[1] Judge Korman has referred this motion to me for a Report and Recommendation. For the reasons explained below, I respectfully recommend that petitioner's motions to vacate his plea and be resentenced be denied.

## I. BACKGROUND

On August 25, 2005, petitioner, a convicted felon, was arrested for possession of a firearm.[2] Tr. of Crim. Cause for Pleading, Jan. 30, 2009, at 23:10–24, United States v. Antonio Bland, 05-CR-833 ("U.S. v. Bland"), ECF No. 60. After his arrest, petitioner retained Joseph Lobosco, Esq. ("Lobosco") to represent him in connection with the potential state charges. Decl. of Pet. Antonio Bland ("Pet.'s Decl.") ¶ 2, Pet.'s Mem. Ex. B.

## A. Lobosco's Representation During Initial Proceedings

On September 22, 2005, a criminal complaint was filed against petitioner in the Eastern District of New York. Compl., U.S. v. Bland, ECF No. 1. In addition to alleging petitioner's possession of a firearm, the complaint also alleged that petitioner had a criminal history, including a previous felony conviction from the Eastern District of Virginia. Id. ¶ 4. Lobosco continued to represent petitioner in the federal proceedings, Pet.'s Decl., and petitioner remained in federal custody after being denied bail, Minute Entry for Proceedings, Oct. 7, 2005, U.S. v. Bland, ECF No. 6.

---

[1] Petitioner filed his initial § 2255 petition pro se. See Pro Se 2255 Pet.; Pro Se Mem. in Supp. of 2255 Pet. ("Pro Se Mem."). Judge Korman has since appointed counsel for petitioner. Order Appt. Counsel, ECF No. 17. I will consider petitioner's memorandum of law, submitted with the assistance of appointed counsel, as the primary source of petitioner's arguments in this case.

[2] According to the federal criminal complaint filed against petitioner, on August 25, 2005, New York City police officers arrested petitioner in Queens, New York, after he approached an undercover officer posing as a prostitute and offered her twenty dollars in exchange for oral sex. Compl. ¶ 2, United States v. Antonio Bland, 05-CR-833 ("U.S. v. Bland"), ECF No. 1. The police arrested petitioner for patronizing a prostitute, and when they searched petitioner incident to arrest, they found a loaded Rossi .38 caliber revolver in a holster in petitioner's right front pants pocket. Id. ¶ 3. The firearm had a defaced serial number, and, when the police asked petitioner why he had the firearm, petitioner stated that he intended to sell it. Id.

On November 3, 2005, a federal grand jury indicted petitioner on two counts: (1) possession of a firearm after having been previously convicted of a crime punishable by imprisonment of over one year, under 18 §§ U.S.C. 922(g)(1), 924(a)(2) and 3551 et seq. ("felon in possession"); and (2) possession of a firearm on which the manufacturer's serial number had been removed, altered, or obliterated, under 18 U.S.C. §§ 922(k), 924(a)(1)(B), et seq. ("possession of a firearm with an altered serial number"). Indictment, U.S. v. Bland, ECF No. 8. In January 2006, the government offered petitioner a plea agreement (hereinafter, "original plea agreement"), which provided that, if petitioner would plead guilty to the first count of the indictment, he would face a sentencing range of 92–115 months, with a maximum sentence of ten years. Pet.'s Decl. ¶ 3; see also Pet.'s Mem. Ex. A (copy of the original plea agreement). Petitioner claims he told Lobosco that he wanted to accept the terms of this original plea agreement. Pet.'s Decl. ¶ 4. According to petitioner, Lobosco advised petitioner that this plea agreement was only a first offer, and that petitioner should "wait and see if [he] could do better." Id. It is not clear from the record when the plea offer expired or was rescinded.

On August 17, 2006, the grand jury handed down a superceding indictment, indicting petitioner again for possession of a firearm with an altered serial number, but this time indicting him as a felon in possession under the ACCA for possession of a firearm after having three prior violent felony convictions. Super. Indictment, U.S. v. Bland, ECF No. 20. The ACCA imposes a mandatory minimum sentence of fifteen years for conviction of a felony by an offender who has three prior violent felonies. 18 U.S.C. §§ 924(e)(1)–(e)(2)(B). The statute defines violent felonies as a felony (1) having as an element the use, attempted use, or threatened use of force; or (2) is burglary of a dwelling, arson, or extortion, involving use of explosives, or otherwise involving conduct that presents a serious potential risk of physical injury to another. Id.

On August 22, 2006, petitioner wrote a letter to Judge Korman, asking that Lobosco be replaced. Pet.'s Ltr. to Judge Korman re Counsel ("Pet.'s Ltr. re Counsel"), <u>U.S. v. Bland</u>, ECF No. 21. Petitioner alleged that Lobosco had failed to give effective representation in many respects, but specifically that "[t]here are a lot of genuine discrepancies concerning my arrest specifics that Mr. Lobosco was supposed to address in a suppressing manner. But he didn't." <u>Id.</u> at 1. Petitioner also alleged that Lobosco was unfamiliar with the federal criminal system, and "[did] not even own a Federal Rules, guidelines, or range books of any type for the federal courts. Nor does he own a federal statue [sic] or code book." <u>Id.</u>

On August 30, 2006, Judge Korman held a status conference regarding petitioner's request for new counsel. Minute Entry for Proceedings, Aug. 30, 2006, <u>U.S. v. Bland</u>, ECF No. 22. In this conference, Judge Korman questioned petitioner about his desire for a new attorney, and petitioner responded that his original, and more favorable, plea offer had expired due to his counsel's lack of familiarity with the federal system. Tr. of Status Conf. Aug. 30, 2006 ("Tr. of Conf. re Counsel") at 2:19–3:10, <u>U.S. v. Bland</u>, ECF No. 43. In response, Assistant United States Attorney Anthony Kyriakakis ("AUSA Kyriakakis") explained that when the government first offered petitioner a plea agreement, it did not have documentation of all of petitioner's prior convictions. <u>Id.</u> at 3:12–16. Subsequently, however, the government received this documentation and determined that the ACCA would apply, and, accordingly, made a subsequent plea offer based on petitioner's prior offenses. <u>Id.</u> at 3:16–20. Lobosco told the Court that after the government presented the original plea agreement, he and his client met with the prosecutor several times, but that "[petitioner] never indicated a desire to take the initial plea nor the new offer." <u>Id.</u> at 6:10–14.

AUSA Kyriakakis explained that it was the government's position that petitioner's prior convictions triggered a fifteen-year mandatory minimum under the ACCA, even if he pleaded to only the original count of felon in possession.  Id. at 7:1–4.  Judge Korman noted that, "I don't think anything that happened here is [Lobosco's] fault but it's a problem."  Id. at 9:22–24.  Petitioner informed the court that he still preferred to have new counsel.  Id. at 9:24–10:4.  Judge Korman agreed to appoint new counsel, and subsequently appointed Peter Kirchheimer of the Federal Defenders of New York ("Kirchheimer").  Id. at 11:17–12:6; Minute Entry for Proceedings, Aug. 30, 2006, U.S. v. Bland, ECF No. 22.

**B.  Representation During Plea and Sentencing**

*1.  Attempts to reinstate original plea*

Soon after Kirchheimer was appointed, petitioner told Kirchheimer of the original plea agreement, and said he had told Lobosco that he wished to accept the offer, but that Lobosco had told him to wait because he could get a better offer.  Decl. of Peter Kirchheimer ("Kirchheimer Decl.") ¶ 2, Pet.'s Mem. Ex. C.  Kirchheimer tried to persuade the government to re-offer petitioner the original plea agreement by arguing that petitioner had been represented by counsel who did not appreciate the consequences of allowing the original offer to expire.  Id. ¶ 3.  However, according to Kirchheimer, "once [the government] had evidence that it believed showed that [petitioner] had three prior felony convictions that qualified him for enhanced sentencing . . . no one agreed to offer the original plea agreement again."  Id.  The government's position was that "[the] ACCA would apply at sentence regardless of the plea offered and . . . they were barred by office policy from offering a non ACCA plea to an ACCA eligible defendant."  Id.  Kirchheimer continued to argue to the government that Federal Rule of Criminal Procedure 11, which requires that a defendant be informed of any applicable mandatory minimums upon pleading guilty, barred a sentence of more than ten years, and that "prior

counsel's ineffective assistance was an improper ground to deny [petitioner] the opportunity to argue for the 10 year maximum," but the government refused to re-offer the original plea. Id.

## 2. Kirchheimer's preparation for plea and sentencing

After the appointment of new counsel, petitioner moved to suppress the firearm found on his person.[3] Tr. of Status Conf., Mar. 9, 2007 ("Tr. of Mar. 9 Status") at 2:19–3:10, U.S. v. Bland, ECF No. 37. After his motion was denied, Kirchheimer recommended that petitioner accept the government's offer to plead to the felon in possession count. Kirchheimer Decl. ¶ 4. Kirchheimer recalls that, initially, he investigated petitioner's prior state convictions and obtained copies of the certificates of disposition and judgments. Id. ¶ 5. He then looked for a basis to challenge the use of the prior convictions to invoke the ACCA mandatory minimum, including focusing on whether suspended sentences would count. Id. He recalls that:

> Unfortunately, I found no basis to challenge any of [petitioner's] three prior convictions as ACCA violent felonies. I did not consider the possibility that North Carolina's definition of the underlying assault offenses of which [petitioner] had been convicted afforded a basis to argue that the offenses did not categorically qualify as a violent felony under [the] ACCA.

Kirchheimer Decl. ¶ 5. Thus, Kirchheimer did not argue at any point that petitioner's underlying state convictions did not categorically qualify[4] him for the ACCA. Kirchheimer explains that he

---

[3] At a status hearing on March 9, 2007, Kirchheimer made an oral motion to suppress the firearm on the ground that the police did not have probable cause to arrest petitioner. Tr. of Status Conf., Mar. 9, 2007 ("Tr. of Mar. 9 Conf.") at 2:19–3:10, U.S. v. Bland, ECF No. 37. Judge Korman referred petitioner's motion to me for a Report and Recommendation, and I scheduled a hearing. Order Referring Motion, April 15, 2008, U.S. v. Bland; Sched. Order, June 25, 2008, U.S. v. Bland. On August 28, 2008, I recommended to Judge Korman that petitioner's motion to suppress be denied. Rep. and Rec., Aug. 28, 2008, U.S. v. Bland, ECF. No. 48. On November 10, 2008, Judge Korman adopted my Report and Recommendation and denied petitioner's motion to suppress. U.S. v. Bland, ECF. No. 52.

[4] As discussed later, in order to be sentenced under the ACCA based solely on the fact of prior convictions, the offenses must "categorically qualify" as violent felonies under the ACCA, meaning that the offense must cover only conduct that falls within the statute's definition of violent felony. Taylor v. United States, 495 U.S. 575, 602 (1990). An offense does not "categorically qualify" if the statute encompasses some conduct that does not fall under the ACCA. Id.

"did not withhold this argument for any strategic purpose: it simply did not occur to [him]." <u>Id.</u> ¶ 6.

Because this argument did not occur to him, Kirchheimer did not reserve petitioner's right to bring an appeal or otherwise challenge his sentence based on the application of the ACCA. <u>Id.</u> According to Kirchheimer, "It is my practice not to sign plea agreements where I forsee [sic] a viable legal issue in the absence of a conditional plea unless it is a particularly good deal." <u>Id.</u>

### 3. Petitioner's guilty plea

On January 30, 2009, petitioner pleaded guilty before Judge Korman. <u>U.S. v. Bland</u>, ECF No. 57. The plea agreement reflected that petitioner would "plead guilty to Count One of the above-captioned indictment, charging a violation of 18 U.S.C. § 922(g)." Ltr. Resp. to Sent. Issue, April 1, 2011, Ex. A (copy of the plea agreement petitioner entered into with the government), ECF No. 12. The agreement also noted that, under the ACCA, this count carried a maximum term of imprisonment of life and a minimum term of fifteen years. <u>Id.</u> ¶ 1. The plea agreement expressly reserved petitioner's right to appeal the denial of his suppression motion, but waived his ability to appeal or challenge his conviction or sentence if he received a sentence of 210 months or less. <u>Id.</u> ¶ 4. Kirchheimer also verbally reserved petitioner's right to appeal the suppression ruling, and noted on the record that petitioner did not agree or stipulate that any of his prior convictions qualified as ACCA predicate felonies. Plea Tr. at 2:22–3:11, <u>U.S. v. Bland</u>, ECF No. 60.

As part of the proceedings, Judge Korman explained the sentencing scheme applicable to petitioner. <u>Id.</u> at 13:5–20:17. He noted that the minimum term of imprisonment listed in the plea agreement was dependent upon the government proving that petitioner had three qualifying

convictions under the ACCA.  Id. at 13:5–14.  After petitioner's allocution that he possessed a firearm, Judge Korman accepted petitioner's plea of guilty and scheduled his sentencing.  Id. at 24:1–8.

### 4. *Presentence Investigation Report*

The Presentence Investigation Report ("PSR") prepared by the United States Department of Probation included details of petitioner's prior convictions, taken from a PSR prepared in the Eastern District of Virginia in 1993 after petitioner's conviction for being a felon in possession of firearms.  Presentence Investigation Report, April 15, 2009 ("PSR") ¶¶ 22–51 (including numerous entries beginning "[a]ccording to the defendant's 1993 presentence report").  The PSR concluded that petitioner had a criminal history category of VI and was subject to the enhanced sentencing provisions of the ACCA.  Id. ¶ 19.

Based on an offense level of 33 and a criminal history category of VI, the PSR calculated petitioner's sentence in a guideline range of 188–235 months.  Id. ¶ 106.  The PSR also concluded that petitioner faced a minimum of 15 years (180 months) under the ACCA.  Id. ¶ 105.

### 5. *Sentencing*

At sentencing, Kirchheimer made a technical objection to the criminal history calculation in the PSR and argued that petitioner had only a category V criminal history.[5]  Tr. of Sentencing, May 8, 2009 ("Sent. Tr.") at 2:24–3:20, U.S. v. Bland, ECF No. 67.  He also argued for downward departure on the grounds that: (1) petitioner received ineffective assistance from Lobosco regarding the original plea agreement; (2) petitioner has serious medical problems; and

---

[5] He pointed out that the government's plea agreement contained a calculation of five as well, but ultimately argued that the issue would not affect petitioner's sentence.  Tr. of Sentencing, May 8, 2009 ("Sent. Tr.") at 3:1–20.  U.S. v. Bland, ECF No. 67.

(3) petitioner had recently served five months in solitary confinement because he witnessed an incident between an inmate and a guard. Id. at 3:25–9:14.

Kirchheimer began the sentencing proceedings by explaining that the guidelines calculation in the PSR was based on a "mandatory minimum because of the ACCA," and told the Court that "[t]he government proved up the ACCA and now [petitioner] is facing a 15 year minimum." Id. at 3:4–9, 4:22–23. In response to Judge Korman's question about an underlying plea agreement, Kirchheimer asserted that there was a plea that was conditioned on appeal of the suppression issue. Id. at 14:13–18.

After hearing Kirchheimer's arguments and giving petitioner a chance to speak, Judge Korman sentenced petitioner to 180 months of incarceration and five years of supervised release.[6] Id. at 13:10–14.

### 6. Petitioner's appeal

On May 29, 2009, petitioner filed a notice of appeal of the denial of his motion to suppress, ECF No. 66, but the Court of Appeals ultimately affirmed denial of the motion, ECF No. 70. During the appeal, however, petitioner's appellate counsel, Barry D. Leiwant, Esq. ("Leiwant") of the Federal Defenders of New York, Inc., Appeals Bureau, filed a motion to be relieved as counsel. Mot. to Be Relieved, Bland v. United States, 384 Fed. Appx. 22, 2010 WL 2717461 (2d Cir. 2010) (No. 09-2379-CR). Leiwant submitted an affidavit in support of his motion asserting that he "had discovered a colorable claim that one or more of the convictions that qualified [petitioner] for the enhanced sentence under § 924(e) is not a 'violent felony' as the term is defined in [the ACCA] . . . ." Decl. of Barry D. Leiwant ("Leiwant Decl."), Pro Se

---

[6] Additionally, Judge Korman sentenced him to a one-year concurrent sentence based on the government's representation that his plea of guilty constituted statutory evidence of a violation of supervised release for a former conviction. Id. 18:3–15.

Mem., Ex. B, ECF No. 2.  According to Leiwant, Kirchheimer's failure to challenge petitioner's status under the ACCA and waiver of petitioner's right to appeal any sentence less than 210 months raised a "potential claim of ineffective assistance of counsel," thereby creating a conflict of interest because Leiwant and Kirchheimer worked for the same office.  Id.

Leiwant informed Kirchheimer of the issue when he discovered it, and Kirchheimer advised petitioner to raise omission of the sentencing argument in a § 2255 petition alleging ineffective assistance of counsel.  Kirchheimer Decl. ¶ 7.

**C.  The Instant Proceedings**

On October 12, 2010, petitioner, acting pro se, filed a petition under 28 U.S.C. § 2255 to vacate his conviction, or, in the alternative, vacate his sentence.  Pro Se 2255 Pet.; Pro Se Mem. He argued that Lobosco was ineffective for advising him not to take the original plea offered to him by the government, and that Kirchheimer was ineffective for failing to argue that petitioner's underlying offenses did not categorically qualify petitioner for the ACCA's mandatory minimum.  Pro Se Mem.  The government filed a letter memorandum in opposition to the petition, arguing that petitioner was properly sentenced under the ACCA, and that his guilty plea was entered into voluntarily, knowingly, and with the advice of competent counsel.  Gov.'s Mem. in Opp. of Pet. ("Gov.'s Mem."), ECF No. 6.  Attached to its memorandum, the government included three documents that it argues establish the applicability of the ACCA, and cited the PSR as further support.  Id.  The three documents were:

(1) A "redacted Criminal Docket, Transcript of Plea and Judgment Suspending Sentence," State of North Carolina, Superior Court, 87-CRS-1252, indicating, inter alia, that petitioner pleaded guilty to the felony of "assault w/ deadly weapon inflicting serious injury" in violation of N.C. Gen. Stat. § 14-32(b), that as a term of the plea the state "has dropped all charges relating to intent to kill," and that petitioner was sentenced to a term of three years;

(2) A "redacted Judgement Suspending Sentence," State of North Carolina, Superior Court, 90-CRS-918, indicating that petitioner pleaded guilty to assault with a deadly

weapon inflicting serious injury in violation of N.C. Gen. Stat. § 14-32(b), and that petitioner was sentenced to a term of five years;

(3) A "redacted Judgment and Commitment and Felony incarceration," 90-CRS-2707, State of North Carolina, indicating that defendant pleaded guilty to assault with a deadly weapon inflicting serious injury, in violation of N.C. Gen. Stat. § 14-32(b), and that petitioner was sentenced to a term of ten years.[7]

Id. Exs. A–C. All three documents indicate that petitioner's convictions were for assault with a deadly weapon inflicting serious injury under N.C. Gen. Stat. § 14-32(b). Id. This offense is known colloquially in North Carolina as "AWDWISI." Id.; Leiwant Ltr. Resp. to J. Korman ("Leiwant Ltr."), ECF No. 12.

On March 10, 2011, Judge Korman issued an order directing Leiwant to submit more information on petitioner's potential claim. Order to Answer, March 10, 2011, ECF No. 10. Leiwant submitted a letter on March 21, 2011, explaining his belief that there was at least a "colorable claim" that petitioner's North Carolina convictions did not qualify for the ACCA's mandatory minimum, or at the very least that the government did not put forth proof of the convictions that was sufficient to invoke the statute. Leiwant Ltr. On April 1, 2011, the government submitted a letter in response to Leiwant's letter, arguing again that petitioner had been properly sentenced under the ACCA, and that the petition was barred by the appeal waiver in petitioner's plea agreement. Gov.'s Ltr. Reply to Leiwant Ltr. ("Gov.'s Reply"), ECF No. 12.

Petitioner subsequently filed a motion to amend his petition, and included a proposed amendment addressing the government's reply. Mot. to Amend, May 5, 2011, ECF No. 14. On the same day, petitioner also filed a motion for appointment of counsel, Mot. to Appoint Counsel, ECF No. 15, and Judge Korman appointed Georgia Hinde, Esq. as petitioner's counsel,

---

[7] Attached to this document was a form listing possible aggravating and mitigating factors, noting that petitioner "has a prior conviction or convictions for criminal offenses punishable by more than 60 days confinement" and that petitioner "has expressed remorse for [the] incident." Gov.'s Ltr. Reply to Leiwant Ltr. ("Gov.'s Reply"), Ex. C, ECF No. 12.

Order Appt. Counsel, ECF No. 17. On April 30, 2012, petitioner, through his newly appointed counsel, filed a memorandum of law in support of his petition, expanding on the legal bases for the arguments raised in his pro se petition, and arguing that: (1) his plea should be vacated due to Lobosco's ineffective assistance; (2) if his plea is not vacated, he should be resentenced because his convictions do not qualify him for the ACCA's mandatory minimum and Kirchheimer was ineffective for failing to raise this claim; and (3) that petitioner is not barred by the waiver in his plea agreement from bringing this petition. Pet.'s Mem. Judge Korman referred this petition to me for a Report and Recommendation. Order Ref. Mot., May 3, 2012.

For the reasons explained below, I conclude that: (1) petitioner's plea agreement does not bar him from bringing a petition based on Kirchheimer's ineffective assistance, but bars him from bringing a petition based on Lobosco's ineffective assistance; (2) even if this Court reaches the merits of his claim, petitioner cannot show that Lobosco was ineffective; and (3) petitioner cannot show that Kirchheimer was ineffective at sentencing because he is properly sentenced under the ACCA. Accordingly, I respectfully recommend that petitioner's motions to vacate his guilty plea and to be resentenced be denied.

## II. DISCUSSION

### A. <u>Petitioner's Waiver of His Right to Bring a § 2255 petition</u>

The government argues that, as part of his plea agreement, petitioner waived his right to appeal or collaterally attack his conviction or sentence, thus he is precluded from bringing this action. <u>See</u> Gov.'s Reply at 5. Specifically, the government argues that petitioner's waiver must be enforced because he was properly sentenced under the ACCA, and that petitioner fails to meet the Second Circuit's standard for disregarding a waiver because he does not contend that his counsel provided unacceptable advice concerning his plea. <u>Id.</u> Because a valid waiver would preclude my consideration of the merits of petitioner's motion, I address this as a threshold issue.

For the reasons stated below, I conclude that petitioner's plea agreement does not bar consideration of petitioner's claim that Kirchheimer was ineffective, but does bar consideration of his claim that Lobosco was ineffective.

Waivers of the right to appeal a conviction or sentence are enforceable but are scrutinized and narrowly construed against the government. United States v. Cunningham, 292 F.3d 115, 117 (2d Cir. 2002); Yushuvayev v. United States of America, 532 F. Supp. 2d 455 (E.D.N.Y. 2008). Where a § 2255 petitioner alleges that he was ineffectively counseled regarding his decision to accept a plea agreement, however, "the situation is somewhat more complicated." Yushavayev, 532 F. Supp. 2d at 468–69. On one hand, rigid enforcement of such waivers would mean that petitioners would effectively never be able to redress actual ineffective assistance of counsel; on the other, disregarding such waivers would allow petitioners to circumvent plea agreements by casting other alleged errors as ineffective assistance of counsel. Id.

In Parisi v. United States, 529 F.3d 134 (2d Cir. 2008), the Second Circuit examined an appellant's claim of ineffective assistance of counsel relating to his plea agreement, and concluded that the waiver of appeal contained in the agreement was not enforceable with respect to his claim. Id. at 138. The court explained that, "[i]n challenging the ineffectiveness of counsel in connection with a plea agreement, a defendant is challenging 'the constitutionality of the *process* by which he waived.'" Id. (emphasis in original) (quoting United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001)). Therefore, an ineffective assistance of counsel claim survives a plea waiver if the claim concerns "the advice [petitioner] received from counsel." Parisi, 529 F.3d at 138–39 (concluding that, because the assistance of counsel claim was based on counsel advising the defendant to accept a guilty plea rather than moving to

dismiss the indictment with prejudice for Speedy Trial Act violations, petitioner sufficiently "connect[ed] the alleged ineffectiveness of [the] attorney with the voluntary nature of his plea").

In <u>Yushuvayev</u>, a petitioner in this district alleged ineffective assistance relating to his acceptance of a plea agreement containing a waiver. <u>Yushavayev</u>, 532 F. Supp. 2d at 462 n.9. The court examined recent Second Circuit treatment of such waivers and concluded that while a waiver might preclude raising an ineffective assistance of counsel claim on direct appeal, a waiver should not always bar collateral attack under § 2255. <u>Id.</u> at 470 (citing <u>United States v. Oladimeji</u>, 463 F.3d 152, 155 (2d Cir. 2006); <u>Clark v. Duncan</u>, No. 01-CV-456, 2007 WL 778417, at *3 (N.D.N.Y. Mar. 13, 2007)). Even though the Court ultimately found petitioner's ineffective assistance claim to be without merit, the Court deemed the waiver "unenforceable in the context of [the] action" and examined the merits of the petition. <u>Id.</u>; <u>see also</u> <u>Cross v. Perez</u>, 823 F. Supp. 2d 142, 152 (E.D.N.Y. 2011) (finding that petitioner's waiver of the right to attack his sentence did not bar review of his Sixth Amendment claim, and noting that <u>Parisi</u> set a broad standard that allows virtually all ineffective assistance claims to survive waivers procured through plea agreements).

Here, Kirchheimer is clear that if had he thought to question whether petitioner's offenses qualified as violent felonies under the ACCA, he would have asked to reserve petitioner's right to appeal or attack that issue, and if the government had refused to insert the waiver, he would have advised petitioner to plead guilty without a plea agreement. Kirchheimer Decl. ¶ 6. Therefore, petitioner argues, Kirchheimer's failure to consider this issue caused him to erroneously advise petitioner to take a plea that did not reserve the ACCA issue for appeal or attack. Pet.'s Mem. at 36.

Petitioner's claim provides the type of "connection" between the effectiveness of the advice petitioner received and the voluntary nature of the plea necessary to find the waiver invalid. <u>Yushavayev</u>, 532 F. Supp. 2d at 470. Petitioner's ineffective assistance at sentencing claim relates directly to Kirchheimer's advice to enter into the plea agreement and waive his right to challenge applicability of the ACCA; thus, the waiver is unenforceable for this claim.

Petitioner's claim of Lobosco's ineffective assistance, however, is not related to the process by which petitioner waived his rights to appeal and petition. Lobosco's alleged deficiency was advising petitioner *not* to plead guilty, and failing to give adequate advice during the plea process. <u>See</u> <u>Parisi</u>, 529 F.3d at 138 (concluding that a petitioner's claim that his attorney should have performed differently in pre-plea negotiations did not relate directly to the process by which the petitioner waived his rights). Petitioner does not argue that Kirchheimer was ineffective for advising him to waive the right to appeal or attack his conviction or sentence based on Lobosco's alleged ineffective assistance. Therefore, I conclude that petitioner's waiver with respect to this claim must be enforced. However, as discussed below, even if this Court reached the merits of this claim, petitioner cannot show Lobosco's ineffective assistance of counsel.

### B. <u>Lobosco's Allegedly Ineffective Assistance</u>

Petitioner claims that he received ineffective assistance of counsel from Lobosco because Lobosco advised him not to take the original plea offered by the government, which would have limited petitioner's potential sentence. To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment, and that these errors undermined the reliability of the result of the proceedings. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984); <u>see also</u> <u>Missouri v. Frye</u>, 132 S. Ct. 1399, 1405 (2012) (applying standard in

the plea bargaining context).  In other words, a petitioner must show both that his attorney's performance fell below an objective standard of reasonableness, and that as a result he suffered prejudice.  Johnson v. United States, 313 F.3d 815, 818 (2d Cir. 2002) (applying standard in the context of a § 2255 petition alleging ineffective assistance of counsel) (citing Strickland).  Failure to establish either of the prongs is fatal to a petitioner's claim.  Strickland, 466 U.S. at 697.

Petitioner makes extensive arguments about Lobosco's deficiency under two recent Supreme Court cases on ineffective assistance of counsel in the plea bargaining context.  See Pet.'s Mem. 13–18 (citing Missouri v. Frye and Lafler v. Cooper).  As discussed below, however, petitioner's claim fails because he cannot establish that the alleged deficiency prejudiced him.

To establish prejudice, petitioner must show that there is a reasonable probability that, but for Lobosco's alleged errors, petitioner's sentence would have been different.  Strickland, 466 U.S. at 694.  A reasonable probability is a "probability sufficient to undermine confidence in the outcome."  Id.  In the context of plea agreements, petitioner must show a reasonable probability that "but for counsel's faulty advice, he and the Government would have agreed to a plea deal carrying a more favorable sentence than the one imposed by the Court."  Lake v. United States, 732 F. Supp. 2d 156, 161 (E.D.N.Y. 2010) (citing Aeid v. Bennett, 296 F.3d 58, 63 (2d Cir. 2002)).

According to petitioner, federal agents and prosecutors told him and Lobosco that if he did not accept the plea, they would collect more information about his past convictions and petitioner could face a longer sentence.  Pet.'s Decl. ¶ 3.  According to petitioner, the government did not collect more information until May or June of 2006, after the plea agreement

had expired.  Id. ¶¶ 4–5.  He does not explain his basis for this conclusory statement concerning actions of the government that he surely did not personally observe.

Petitioner's only argument regarding prejudice is that "[i]t is doubtful that the government would have continued to look for evidence that a defendant's prior convictions warranted an ACCA sentencing enhancement once he accepted an early plea agreement and entered an acceptable guilty plea to an offense carrying an unenhanced statutory range."  Pet.'s Mem. at 18 n.11.  This assertion is simply not supported by the record, nor does the evidence suggest that petitioner did indeed tell Lobosco he wanted to take the plea.

Petitioner wrote the Court expressing concern about Lobosco's abilities, and Judge Korman held a conference to address the issue.  See Tr. of Conf. re Counsel.  At the conference, Judge Korman questioned petitioner, the government, and Lobosco about petitioner's original plea.  When asked by Judge Korman about the reasons for changing the government's plea offer, AUSA Kyriakakis told the Court that the government had intended to apply the ACCA from the beginning of proceedings against petitioner but was waiting on evidence that petitioner indeed had a third qualifying conviction, as indicated by his rap sheet.  See Tr. of Conf. re Counsel at 4:3–5:13 (explaining that the government had petitioner's rap sheet from the beginning of the criminal proceedings, but did not receive a certified copy of the third conviction until later).  According to AUSA Kyriakakis, "once we realized that the third conviction actually did take place and we received a certified copy, we recognized that [the ACCA] would apply, and *at that point, this was - I believe back in January, rescinded the plea*."  Id. at 5:7–11 (emphasis added).  AUSA Kyriakakis' statements on the record indicate that the government not only intended from very early in the process to attempt to sentence petitioner under the ACCA, but that they had the evidence to do so as early as January of 2006.

The evidence also belies petitioner's assertion that he had told his attorney he wanted to take the original plea. In a declaration submitted for these proceedings, petitioner asserts that, "I told Lobosco that I would accept the terms of the original plea agreement and wanted to plead guilty."[8] Pet.'s Decl. ¶¶ 3–4. However, this assertion is different from his contemporaneous statements on the record. In his letter to the Court in August of 2008, he wrote:

> There are a lot of genuine discrepancies concerning my arrest specifics that [Lobosco] was supposed to address to you in a suppressing manner. But he didn't. Even with the discrepancies, a plea was sent to me dated January 17, 2006, which was a 0–10 year plea with a range of approximately 92 months. During this time, I agreed to consider the offer.

Pet.'s Ltr. re Counsel. At the status conference, Judge Korman asked petitioner what had happened, and petitioner told him that "[AUSA] Kyriakakis had offered us a plea and he gave us a deadline to take the plead [sic] or face enhancements and we didn't meet the deadline." Tr. at 3:2–4. Judge Korman then asked him, "Do you wish to take the plea?" and he responded "[t]he initial plea but the plea that I have now I don't." Id. at 3:9–10. Judge Korman also asked Lobosco, "And so why didn't you accept the original plea offer?" to which he responded:

> Judge, during the time period when the plea was made, we had several proffer sessions with the United States Attorney's Office, during which time the offer was kept open. *My client never indicated a desire to take the initial plea nor the new offer.*

Tr. at 6:10–14 (emphasis added).

After hearing from all three parties involved, Judge Korman remarked that petitioner's lawyer seemed to know what he was doing, and that petitioner was just caught in a difficult situation. Tr. at 8:2–5. He concluded that:

---

[8] Petitioner's declaration does not specify when petitioner told this to Lobosco, but based on the chronology of the other events described, it seems to be sometime after the government offered the original plea in January 2006. See Pet.'s Decl. ¶¶ 3–6.

> I don't know what to do.  I mean, I will appoint another lawyer if it will make you happy but it seems to me that I don't know what your bargaining position is here. . . . *I don't think anything that happened here is your lawyer's fault but it's a problem.*

Tr. at 9:17–24 (emphasis added).

This Court need not assume the credibility of petitioner's factual assertions because they are contradicted by the record of the underlying proceeding.  Puglisi v. United States, 586 F.3d 209, 214–15 (2d Cir. 2001) (collecting cases).  Counsel stated on the record that his client had not told him he wanted to take the plea.  Petitioner's statements—in the letter, and to the Court—do not contradict this; rather, they indicate that petitioner was unhappy with his lawyer because he thought evidence against him should be suppressed and that he should not be sentenced under the ACCA.  What is more, petitioner cannot show that if he had agreed to plead guilty in the months prior he would have been able to accept the original plea agreement.  AUSA Kyriakakis' statements indicate that the government had the documents it believed it needed to sentence petitioner under the ACCA as early as January, and that it rescinded the original offer.

The parties' responses to Judge Korman's questioning are contemporaneous statements.  These statements are more reliable than the testimony that would be elicited at a hearing held on this issue now, over six years after the events in question.[9]  They also constitute a sufficient basis to conclude that Lobosco's advice did not prejudice petitioner.  Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001) (affirming the district court's conclusion that the potential testimony of the petitioner and his trial counsel at a § 2255 hearing would add little or nothing to the record and written submissions, and concluding that it is within a court's discretion to avoid the delay and needless expenditure of a full testimonial hearing).  Because sufficient examination of the

---

[9] This is especially true of the statements made by petitioner and his counsel.  Petitioner indicates in his memorandum that Lobosco was recently contacted for an affidavit but that Lobosco does not recall his advice to petitioner, given over six years ago.  Pet.'s Mem. at 13 n.9.

relevant parties was made much closer to the time that the allegedly defective advice occurred, there is no need to hold a hearing. Id.; see also Puglisi, 586 F.3d at 214–15. Based on the record evidence elicited at the status conference and the conclusions of Judge Korman after questioning the parties, petitioner cannot show a reasonable probability that, but-for his counsel's erroneous advice, he and the government would have entered into the original plea agreement. Therefore, petitioner cannot demonstrate prejudice and his claim that he received ineffective assistance from Lobosco must be denied.

## C. Kirchheimer's Allegedly Ineffective Assistance

As discussed above, demonstrating ineffective assistance of counsel requires showing that counsel was deficient, and that the deficiency prejudiced petitioner. Johnson, 313 F.3d at 818. Here, petitioner alleges that petitioner was wrongly sentenced under the ACCA when Kirchheimer failed to recognize that the offense of petitioner's prior convictions might not categorically constitute a violent felony under the ACCA. Pet.'s Mem. at 32–33. Specifically, petitioner argues that the government's evidence establishes only the fact of petitioner's prior convictions for the North Carolina offense of "assault with a deadly weapon causing serious injury" (or "AWDWISI"), and that the offense encompasses some conduct that does not constitute an ACCA offense. Id. at 24–31. Therefore, petitioner argues, the government's evidence was not sufficient to establish that petitioner should be sentenced under the ACCA, and therefore, he was improperly sentenced to the statute's mandatory minimum. Id.

A petitioner cannot show prejudice if the claim or objection that an attorney failed to pursue lacks merit. Harrington v. United States, No. 11-2119-pr, 2012 WL 3156160, at *3 (Aug. 6, 2012 2d Cir.) (citing Aparicio v. Artuz, 269 F.3d 78, 99 n.10 (2d Cir. 2001)). Accordingly, petitioner cannot satisfy the prejudice prong of Strickland if he was properly sentenced under the

ACCA.[10]  Harrington, 2012 WL 3156160, at *4.  As explained below, I conclude that the crime underlying petitioner's convictions is categorically a violent felony under the ACCA.  Therefore, petitioner was properly sentenced under the ACCA, and cannot demonstrate ineffective assistance of counsel.

### 1. The ACCA

The ACCA provides that any person who violates 18 U.S.C. § 922(g), prohibiting possession of a firearm by any person previously convicted of a felony (hereinafter "felon in possession"), and has three previous convictions for a violent felony, "shall be . . . imprisoned not less than fifteen years."  18 U.S.C. § 924(e)(1).  The statute goes on to define "violent felony" as:

> [A]ny crime punishable by imprisonment for a term exceeding one year . . . that;
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."

18 U.S.C. § 924(e)(2)(B).[11]

The second clause of the ACCA lists the enumerated crimes of burglary, arson, extortion, or crime involving the use of explosives, and also contains a "residual clause" that encompasses

---

[10] The court in Harrington analyzed whether the petitioner was properly sentenced under the ACCA by applying current caselaw on the applicability of the statute, even though Harrington was sentenced several years prior.  Id. at *6–9.  Indeed, in the context of prejudice, the question is whether petitioner would be resentenced in the same manner if sentenced under current law.  United States v. Maldonado, 996 F.2d 598, 599 (2d Cir. 1993) ("[W]hen a sentence has been vacated, the defendant is placed in the same position as if he had never been sentenced.").  Accordingly, I will analyze whether petitioner is properly sentenced to the ACCA under current law.

[11] The federal sentencing guidelines incorporate this statute in U.S.S.G. §4 B1.4, which provides that "[a] defendant who is subject to an enhanced sentence under . . . 18 U.S.C. § 924(e) is an armed career criminal" and sets the applicable base offense level of 33, or 34 if the conviction for sentencing involves possession of the firearm in connection with a crime of violence.  U.S.S.G. §4 B1.4(a)–(b) (2011).

crimes that "otherwise involve[ ] conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). The residual clause encompasses crimes, other than those listed, "typically involve[ing] purposeful, 'violent,' and 'aggressive' conduct . . . such that it makes it more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim.'" Begay v. United States, 553 U.S. 137, 144–45 (2008) (citations omitted).

In determining whether an offender's prior convictions constitute violent felonies under the ACCA, a sentencing court must consider the state definition of the offense, not the specific conduct of the particular offender. Shephard v. United States, 544 U.S. 13, 17 (2005) (citing Taylor v. United States, 495 U.S. 575 (1990)). Accordingly, to determine whether the ACCA applies to a particular offender, a sentencing court must consider only "'the fact of conviction and the statutory definition of the prior offense.'" Shephard, 544 U.S. at 17 (quoting Taylor).

Some states define certain offenses more broadly than the generic definition of the offense. See, e.g., Shepard, 544 U.S. at 17 (explaining that, in Taylor, the Massachusetts burglary statute defined burglary more broadly than "generic" burglary because the statute extended burglary to include entries into boats and cars in addition to buildings). In these cases, the offense encompasses both crimes that would fall within the ACCA and crimes that would not, and the sentencing court must determine whether the defendant was convicted of, or pleaded

to, elements that would put his particular offense within the ACCA.[12]  Id.; see also United States v. Baker, 665 F.3d 51, 56 (2d Cir. 2012) (explaining that, in a case where a statute encompasses conduct qualifying under the ACCA as well as conduct that does not qualify, the court must determine whether the judicial record of the defendant's prior conviction establishes that his prior guilty plea "necessarily admitted elements of the [qualifying] offense").

Determining whether an offense invokes the ACCA requires determining whether the offense is categorically a violent felony under the ACCA (such that the only evidence required for applying the ACCA is the fact of conviction), or an offense that is not categorically a violent felony but includes violent felonies (such that the sentencing court looks to the elements of the defendant's conviction to ascertain whether the defendant was convicted of a violent felony). See United States v. Ossana, 638 F.3d 895, 899 (8th Cir. 2011) (describing the process for determining whether the ACCA applies to a particular offense).  Because the government argues that petitioner's convictions are categorically violent felonies under the ACCA, this is the entirety of the analysis necessary in this case.

### 2. Applying the ACCA to petitioner's convictions

Petitioner has three prior convictions under N.C. Gen. Stat. § 14-32 (b), which provides that "[a]ny person who assaults another person with a deadly weapon and inflicts serious injury shall be punished as a Class E felon."  N.C. Gen. Stat. § 14-32 (b).  Assault is defined as:

---

[12] The documents a sentencing court can rely upon to make this determination are limited.  Besides the fact of a prior conviction, any factual determination authorizing an increase in a maximum sentence for an offense must be made by a jury on the basis of proof beyond a reasonable doubt.  Apprendi v. New Jersey, 530 U.S. 466 (2000). Therefore, a court may only rely upon documents where the facts have already been found or admitted by defendant, such as the indictment or information, jury instructions, transcripts of guilty plea colloquies or written plea agreements, or some comparable judicial record of this information.  United States v. Rosa, 507 F.3d 142, 156–57 (2d Cir. 2007); see also Shepard 544 U.S. at 17–23 (indicating, in the plurality, that the record of a guilty plea could be examined, but that the underlying police reports could not be examined to determine the admitted elements of the generic offense); Reyes v. United States, No. 10-1400-cr, 2012 WL 3711727 (2d Cir. Aug. 29, 2012) (holding that, even where a defendant makes no objection to a PSR, the sentencing court cannot rely on the PSR's descriptions of the prior convictions as "crimes of violence" under U.S.S.G. § 4B1.2(a)(1) in order to sentence the defendant accordingly).

> an overt act or an attempt, or the unequivocal appearance of an attempt, *with force and violence*, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm.

State v. Roberts, 155 S.E.2d 303, 305 (N.C. 1967) (emphasis added).

Whether petitioner was properly sentenced under the ACCA turns on whether the offense of his conviction, North Carolina's AWDWISI, is categorically a violent felony under the ACCA. Petitioner argues that it is not categorically a violent felony because the offense can be committed through conduct that is reckless or negligent. Pet.'s Mem. at 23–26. The government argues that AWDWISI is categorically a violent felony under the ACCA because, under North Carolina law, AWDWISI requires intent to injure, which satisfies either prong of the ACCA. Gov.'s Reply at 4.

This issue is, as conceded by the government, a close question. Gov.'s Reply at 4. The law on the application of the ACCA is complicated and, in many ways, unsettled.[13] However, as discussed below, I conclude that AWDWISI, as defined by the North Carolina Supreme Court, is a violent felony under either prong of the ACCA.

### a. AWDWISI falls within the residual clause of the ACCA

In 2008, the Supreme Court concluded that the offense of drunk driving was not a violent felony within the ACCA's residual clause. See Begay v. United States, 553 U.S. 137, 145–146

---

[13] In his 2011 dissent from the denial of certiorari to several cases involving designation of offenses as categorically violent felonies under the ACCA, Justice Scalia characterized the issue of how the Court would have come out on the issues as a "[A] fine subject for a law-office betting pool. No one knows for sure." Derby v. United States, 131 S. Ct. 2858, 2859 (2011). Justice Scalia continued:

> If it is uncertain how this Court will apply Sykes and the rest of our ACCA cases going forward, it is even more uncertain how our lower-court colleagues will deal with them. Conceivably, they will simply throw the opinions into the air in frustration, and give free rein to their feelings as to what offenses should be considered crimes of violence—which, to tell the truth, seems to be what we have done.

Id.

(2008) (concluding that New Mexico's "driving under the influence of alcohol" offense was not a "violent felony" under the ACCA, and differentiating between DUI and crimes involving purposeful, violent, or aggressive conduct). Since Begay, numerous courts have concluded that offenses that require only omissions, negligence, or recklessness cannot categorically be considered violent felonies within the meaning of the ACCA's residual prong. See, e.g., United States v. Gray, 535 F.3d 128, 131–32 (2d Cir. 2008) (citing Begay and determining that reckless endangerment statute did not encompass intentional conduct and therefore did not fall under the ACCA); United States v. Smith, 544 F.3d 781, 785 (7th Cir. 2008) (determining that the Indiana assault statute at issue, on its face, encompassed both reckless and intentional acts creating a substantial risk of bodily injury to another person, and therefore was not categorically a violent felony under the ACCA); Ossana, 638 F.3d at 902–03 (concluding that Arizona's assault statute, which had been interpreted to include reckless behavior if physical injury results, was not categorically a violent felony within the residual clause).

In Sykes v. United States, 131 S.Ct. 2267 (2011), however, the Supreme Court clarified that Begay merely "held that driving under the influence (DUI) is not an ACCA predicate," and that its precedent should not be overread. Id. at 2275; see also Harrington, 2012 WL 3156160, at *7-9 (discussing Sykes' clarification of Begay). Thus, while Begay addressed DUI, "a crime akin to strict liability, negligence, and recklessness crimes," the felony at issue in Sykes—flight in which the offender operates a vehicle that creates a substantial risk of bodily injury to another person—was not a strict liability, negligence, or recklessness crime. Id. at 2276. The Sykes Court emphasized that there is no "purposeful, violent, and aggressive" requirement in the statutory text, and that the statutory language must be the crux of an ACCA analysis. Id. at 2275. After Sykes, the focus of a judicial inquiry regarding the residual clause must remain on

"whether the proscribed conduct presents 'a serious potential risk of physical injury to another.'" Harrington, 2012 WL 3156160, at *8 (quoting the ACCA). This means asking whether the offense "presents a serious potential risk of injury to another." United States v. Daye, 571 F.3d 225 (2d Cir. 2009).

To determine whether North Carolina's crime of AWDWISI falls within the ACCA, this Court is bound by the North Carolina Supreme Court's interpretation of the offense, including its determination of the elements of the crime. Johnson v. United States, 130 S. Ct. 1265, 1270 (2010) (citing Johnson v. Fankell, 520 U.S. 911, 916 (1997)). Applying the guidelines described above to the North Carolina Supreme Court's determination of the elements of AWDWISI, I conclude that the offense of AWDWISI falls within the residual clause of the ACCA.

The North Carolina Supreme Court has determined that the statutory offense of AWDWISI extends to a driver who operates an automobile in a reckless or dangerous manner and causes serious injury to another person. State v. Jones, 538 S.E.2d 917, 922–23 (N.C. 2000). A conviction for AWDWISI based on this type of conduct requires proof that the offender used the car as a deadly weapon by driving it in a reckless or dangerous manner and proximately caused serious injury to another, "provided there is an *actual intent to inflict injury or culpable criminal negligence from which such intent may be implied*." Id. at 923 (emphasis added). The application of AWDWISI to this type of conduct originates from a case concluding that evidence that a defendant "willfully and intentionally used the automobile as a means of causing [the victim] to be thrown therefrom" was enough to sustain a conviction under AWDWISI. State v. Eason, 86 S.E.2d 774, 779 (N.C. 1955).

As petitioner points out, lower courts applying North Carolina law in this area have given varying descriptions of the intent requirement of AWDWISI. Compare State v. Curie, 198

S.E.2d 28, 30 (N.C. Ct. App. 1970) (noting, in a discussion of whether the prosecutor was required to prove defendant's specific intent, that the offenses of AWDWISI, assault with a deadly weapon, and wrongful breaking and entering did not require proof of defendant's intent) with State v. Wade, 589 S.E.2d 379, 382–83 (N.C. Ct. App. 2003) (upholding a conviction for AWDWISI based on a showing of culpable negligence, defined as "recklessness or carelessness, proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others"); State v. Dammons, 571 S.E.2d 87, No. COA02-60, 2002 WL 31461038, at *2 (N.C. Ct. App. Nov. 5, 2002) (finding that evidence of defendant's impairment was sufficient to satisfy AWDWISI's requirement that the conduct was "willful").

According to the North Carolina Supreme Court, however, a conviction for AWDWISI can only be obtained through evidence of use of an automobile as a deadly weapon by showing of willful or intentional conduct, or circumstances from which such intent can be implied. Jones, 538 S.E.2d at 923. This differs from mere driving under the influence in several notable ways.[14]

First, conviction for AWDWISI requires use of a car as a deadly weapon, id., as opposed to merely driving while intoxicated. Second, conviction for AWDWISI requires evidence that the offender's conduct caused serious injury. Id.; see also State v. Walker, 694 S.E.2d 484, 495 (N.C. Ct. App. 2010) (explaining that serious injury must be physical or bodily injury and is a factual determination to be made by the jury, and listing factors deemed relevant in determining whether serious injury has been inflicted). Third, and most importantly, AWDWISI through the

---

[14] The facts of Jones illustrate the difference between mere drunk driving and the commission of AWDWISI through use of an automobile. In Jones, the evidence showed that the defendant had been bumping into the back of other vehicles and yelling for them to get out of the way, and was driving in the wrong lane, swerving, and eventually collided into the victims' car. Jones, 538 S.E.2d at 921. The evidence also showed that defendant was driving under the influence of both alcohol and several controlled substances—including Oxycodone—after being told by a physician that he was not to drink or drive while taking his prescriptions. Id.

use of an automobile requires a showing of either intent or implied intent, and is not akin to drunk driving statutes that do not contain a mens rea requirement. According to the North Carolina Supreme Court, intent for AWDWISI convictions based on use of an automobile can be shown in two ways: (1) actual intent to inflict injury; or (2) culpable criminal negligence from which such intent may be implied. <u>Jones</u>, 538 S.E.2d at 922–23. Because actual intent would satisfy the intent requirement of the ACCA, this analysis must focus on the latter.

Culpable negligence is "such recklessness or carelessness, proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others." <u>Id.</u> (quoting <u>State v. Weston</u>, 159 S.E.2d 883, 886 (N.C. 1968)). It may be shown through the intentional violation of a safety statute such as that prohibiting drunk driving, or through unintentional violation accompanied by circumstances evincing "recklessness of probable consequences of a dangerous nature, when tested by the rule of reasonable [foreseeability], amounting altogether to a thoughtless disregard of consequences or of a heedless indifference to the safety of others." <u>Id.</u> Culpable negligence "may be used to satisfy the intent requisites for certain dangerous felonies[15] [under North Carolina law] such as manslaughter, assault with a deadly weapon with intent to kill, and AWDWISI." <u>Id.</u> at 166. North Carolina considers violation of the safety statute prohibiting driving under the influence to be "willful by its very nature." <u>State v. McGill</u>, 336 S.E.2d 90, 90 n.1, 92 n.3 (N.C. 1985) (noting that the jury instructions in the case required a finding that violation of the statute was willful, wanton, or intentional), and explaining that "one who drives under the influence cannot be said to do so

---

[15] A state's designation of an offense as a "dangerous felony" does not bind a federal court's determination of whether a crime is a "violent felony." <u>See</u> <u>Johnson v. United States</u>, 130 S.Ct. 1265 at 1270 (2010) (the Florida Supreme Court's determination that a battery was a forcible felony did not bind the Court, because interpretation of the terms within the ACCA is a matter of federal law).

inadvertently"). Thus, although the use of the word "negligence" could be misleading, the North Carolina Supreme Court is clear that the offense of AWDWISI has an intent requirement.

Moreover, the offense of AWDWISI requires a serious risk that bodily injury will occur. Unlike mere drunk driving, which does not by definition create the type of risk of bodily injury that places an offense within the residual clause, the offense of AWDWISI involves affirmative conduct creating a risk that the perpetrator will intentionally use force. See Daye, 571 F.3d at 233. Mere drunk driving offenses do not necessarily involve a risk comparable to that of burglary, arson, extortion, or offenses involving explosives. Sykes, 131 S. Ct. at 2275–76. Using a car as a deadly weapon, on the other hand, is not the type of offense that the Begay opinion sought to preclude from the residual prong. Begay, 553 U.S. at 146–47 (listing, in addition to drunk driving, offenses of the type that must be kept out of the ACCA, such as reckless pollution, negligent introduction of pollutants into the sewer system, recklessly tampering with consumer products, and inattentive seamen).

Rather, the offense of assault with a deadly weapon inflicting serious injury is more akin to other offenses determined to be violent felonies under the residual prong. See Sykes, 131 S. Ct. 2267 (knowing or intentional flight from law enforcement officer by vehicle is categorically a violent felony under the residual clause of the ACCA); Harrington, 2012 WL 3156160 (first degree unlawful restraint is categorically a violent felony under the residual clause); United States v. Baker, 665 F.3d 51 (2d Cir. 2012) (escape from a correctional facility or lock-up is categorically a violent felony under the residual clause); see also Blake v. Gonzalez, 481 F.3d 152 (2d Cir. 2007) (assault and battery against a police officer, committed through intentional conduct that is wanton and reckless and results in demonstrable injury, is categorically a crime of

violence under the residual clause of 18 U.S.C. § 16, which uses the same definition as the ACCA).

Petitioner's argument is essentially that a conviction for AWDWISI can be obtained merely by proving that the offender was driving drunk, and that this conduct is not within the residual clause of the ACCA. It is clear to me, however, that although the North Carolina courts have used misleading language to describe the intent requirement for the offense, a conviction of AWDWISI for using an automobile as a deadly weapon requires either intent or implied intent. Labeling this implied intent as "culpable negligence" in certain circumstances does not change the fact that a conviction for AWDWISI cannot be obtained based on strict liability, omissions, negligence, or recklessness in the ordinary sense. Moreover, recent Supreme Court precedent suggests that analysis under the residual prong must focus on the type of risk created, and use of an automobile as a deadly weapon creates the type of risk contemplated by the residual clause. For these reasons, I conclude that the North Carolina offense of AWDWISI is categorically a violent felony within the residual clause of the ACCA.[16]

### b. AWDWISI also falls within the first prong of the ACCA

In addition to falling within the residual prong of the ACCA, AWDWISI is categorically a violent felony within the "use, attempted use, or threatened use of force" prong of the ACCA.

_____

[16] Indeed, the Fourth Circuit has assumed, without concluding, that North Carolina's offense of AWDWISI is categorically a violent felony under the ACCA, and has done so in decisions both before and after the Supreme Court's decision in Begay. See United States v. Barnette, 203 Fed. Appx. 518, 520 (4th Cir. 2006) (concluding that, where appellant had challenged the applicability of the ACCA to another offense, appellant's previous convictions—including one for AWDWISI—counted as ACCA offenses and thus no error in sentencing had been committed); United States v. Brady, 438 Fed. Appx. 191, at *1 (4th Cir. 2011) (assuming that the fact of petitioner's conviction for AWDWISI was sufficient to establish that it was an ACCA offense); United States v. Boykin, 669 F.3d 467, 472 (4th Cir. 2012) (holding that the district court had committed plain error in relying on the PSR to conclude that two convictions for AWDWISI were committed on separate occasions, as required to be ACCA predicates). In Boykin, the Fourth Circuit remarked that, "[w]ithout the PSR's details" the only information available to determine whether the offenses were violent felonies under the ACCA "is the fact that Boykin was convicted of two violent felonies committed the same day." Id. In other words, the simple fact of conviction under the statute was enough to determine that the convictions were for violent felonies. Id. None of the cases noted here, however, indicate that the petitioner raised the argument of intent as was raised in this case. Therefore, these cases serve merely as further support for my conclusion in this case.

Petitioner argues that because § 14-32(b) itself does not mention the use of force, the offense does not fit within this prong. Pet.'s Mem. at 24. However, in North Carolina, the crime of assault is governed by common law rules, and the common law definition of assault includes "an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence . . ." Roberts, 155 S.E.2d at 303. Therefore, petitioner's argument fails, and I conclude that AWDWISI has as an element the "use, attempted use, or threatened use of force."

Petitioner also argues that, even if AWDWISI falls within the first prong of the ACCA, the first prong requires a level of intent higher than that required for an AWDWISI conviction, and therefore the offense is still outside the ACCA. Pet.'s Mem. at 27–28. As discussed below, however, the level of intent required for the first prong is unclear, but even if that prong does require intentional conduct, AWDWISI satisfies that requirement.

Petitioner relies on cases on the intent requirement of "crime of violence," as defined in another federal criminal statute using the same language as the ACCA. Id. Under this statute, 18 U.S.C. § 16, the definition of "crime of violence" has been found to encompass only crimes with a mens rea requirement higher than "merely accidental or negligent conduct." See Leocal v. Ashcroft, 543 U.S. 1, 8–11 (2004) (concluding that a DUI offense without a mens rea requirement did not fall within 18 U.S.C. § 16); Jobson v. Ashcroft, 326 F.3d 367, 371–74 (2d Cir. 2003) (concluding that New York's offense of second-degree manslaughter, recklessly causing the death of another person, was not a "crime of violence" under 18 U.S.C. § 16(b) because the offense was broad enough to encompass passive conduct or omissions). Some courts have applied the intent requirement of 18 U.S.C. § 16 to interpret the ACCA. See, e.g., United States v. McMurray, 653 F.3d 367, 374–75 (6th Cir. 2011) (analyzing Tennessee's aggravated assault statute and relying on Leocal to conclude that "use of force" requires more

than reckless conduct). However, others have noted that the two statutes cannot be conflated. See, e.g., Daye, 571 F.3d at 232 (interpreting the ACCA and using Leocal and Jobson for analogy, but clarifying that "we recognize that differences exist [between the two statutes] and that our previous decisions regarding § 16(b) do not control our decision in this case."). The Supreme Court has applied also caselaw interpreting 18 U.S.C. § 16 to the first prong of the ACCA in the context of "use of physical force," see Johnson v. United States, 130 S.Ct. 1265, 1270–71 (2010) (looking to Leocal to aid analysis of what level of force is required for the first prong of the ACCA), but has not, to date, explicitly addressed the intent requirement of the first prong.

Other circuits have determined that the first prong requires more than reckless conduct. See McMurray, 653 F.3d at 374; United States v. Zuniga-Soto, 527 F.3d 1110, 1124 (10th Cir. 2008) (listing cases). I am unaware, however, of any Second Circuit case adopting this interpretation.

Moreover, as discussed above, the offense of AWDWISI requires either intentional conduct, or circumstances from which such intent can be implied. Therefore, even if the first prong does require intentional conduct, a conviction for AWDWISI satisfies that requirement. Therefore, because AWDWISI has as an element the "use, attempted use, or threatened use of force," AWDWISI is categorically a violent felony under the first prong of the ACCA.

### c. No hearing is necessary

To warrant a hearing under 28 U.S.C. § 2255, a petitioner need only establish whether he has a plausible claim for relief. Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009). The standard for analyzing the claim is akin to that of summary judgment, and if there is no dispute as to any material fact, no hearing is necessary. Id. Here, there is no dispute as to any fact

relating to petitioner's sentence, but a dispute about the applicability of the ACCA. Therefore, no hearing is necessary to determine that petitioner is properly sentenced under the ACCA.

### d. Reasonableness of Kirchheimer's actions

It must be noted that although I find that petitioner was properly sentenced under the ACCA, the categorical designation of an offense as a violent felony under the ACCA is a difficult determination and should not be taken lightly. The fact that defense counsel did not think to question the sufficiency of the government's evidence to invoke the ACCA, Kirchheimer Decl. ¶ 5, is troubling. The government may not rely on a PSR to establish facts enhancing a defendant's sentence. Reyes, 2012 WL 3711727, at *5–6. Therefore, if AWDWISI were not categorically an ACCA predicate, the government's evidence would have been insufficient. Nevertheless, because this particular offense falls within either prong of the ACCA, this case is not one where the government must produce further evidence of the elements of petitioner's prior offenses.

Because I conclude that AWDWISI is categorically a violent felony under the ACCA, petitioner was properly sentenced under the ACCA. Harrington, 2012 WL 3156160, at *4. Thus, he cannot show ineffective assistance of counsel, and his motion to vacate his sentence must be denied.

### III. CONCLUSION

In sum, for the reasons explained above, I conclude that: (1) petitioner's plea agreement does not bar him from bringing a petition based on Kirchheimer's ineffective assistance, but bars him from bringing a petition based on Lobosco's ineffective assistance; (2) even if this Court reached the merits of his claim, petitioner cannot show that he received ineffective assistance of counsel from Lobosco; and (3) petitioner cannot show that he received ineffective assistance of counsel at sentencing because he is properly sentenced under the ACCA. Accordingly, I

respectfully recommend that petitioner's motions to vacate his guilty plea and to be resentenced

be denied.

SO ORDERED.

Dated: September 18, 2012
       Brooklyn, New York

                                    _____/s/_____
                                    JOAN M. AZRACK
                                    UNITED STATES MAGISTRATE JUDGE